**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TRYKO MANAGEMENT SERVICES LLC,** *et al.*, | |
| Plaintiffs, | Civil Action No. 20-1285 (ZNQ) (DEA) |
| v. | **OPINION** |
| **LLOYD'S SYNDICATE 3624 (HISCOX)**, | |
| Defendant. | |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon separate Motions for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The first Motion for Summary Judgment ("Plaintiff Motion", ECF No. 30) was filed by Plaintiffs Tryko Management Services, LLC, First Property Accounting Services, Inc. ("First Property"), RKK Holdings, LLC ("RKK"), FNA Jersey BOI ("FNA BOI"), LLC, FNA Jersey Lien Services, LLC ("FNA Lien"), and Public Tax Investments ("Public Tax"), LLC (collectively, "Plaintiffs").  The second Partial Motion for Summary Judgment ("Defendant Motion", ECF No. 31) was filed by Defendant Lloyd's Syndicate 3624 ("Defendant").

Plaintiffs filed a Brief in Support of their Motion ("Pl. Moving Br.", ECF No. 30-16) and a Statement of Undisputed Material Facts ("Pl. SUMF", ECF No. 30-1).  Defendant filed a Brief in Opposition to the Plaintiff Motion ("Def. Opp'n", ECF No. 40) along with its Counter-Statement

of Material Facts ("Def. Counter SUMF", ECF No. 40-1) to which Plaintiff replied ("Pl. Reply", ECF No. 41).

Similarly, Defendant filed a Brief in Support of its Motion ("Def. Moving Br.", ECF No. 31-2) and a Statement of Material Facts ("Def. SMF", ECF No. 31-1). Plaintiffs filed a Brief in Opposition to Defendant's Motion ("Pl. Opp'n", ECF No. 39) along with their Counter-Statement of Material Facts ("Pl. Counter SUMF", ECF No. 39-1). Defendant filed a Reply Brief in response to Plaintiffs' Brief in Opposition. ("Def. Reply", ECF No. 42.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will DENY Plaintiffs' Motion for Summary Judgment, and GRANT IN PART and DENY IN PART Defendant's Partial Motion for Summary Judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. The Parties

Plaintiffs are six related companies that share common ownership and operations. The primary business of Plaintiffs is the investment and administration of tax sale certificates in New Jersey. Plaintiffs engage in this industry by participating in public tax sales in NJ, and then administrating and foreclosing upon tax sale certificates. Defendant is an underwriter that insures risk.

### B. Procedural History

This action was commenced on December 19, 2019 and removed to the Court on February 6, 2020. (ECF No. 1.) Plaintiffs allege that Defendant wrongfully refused to add certain insured parties to an existing Officers and Directors insurance policy and then wrongfully denied the claims submitted by each of the six plaintiffs seeking coverage for two underlying actions.

Plaintiffs and Defendant filed opposing motions for summary judgment on June 24, 2022. (ECF Nos. 30, 31.)

### C. Undisputed Facts

The Court has found the following facts to be relevant and undisputed.

This matter involves a claim where Plaintiffs assert they were "insureds" under an insurance policy issued by the Defendant, and where the Defendant has denied the claims for two litigation matters that arose in 2018. (Pl. SUMF ¶ 1, 9; Def. SMF ¶ 3.) On June 22, 2018, Tryko Management Services, LLC and First Property Accounting Services, Inc. were sued by First National Holdings, LLC in the Superior Court of New Jersey, Law Division, Ocean County (the "NJ Lawsuit").[1] (Def. SMF ¶ 4.) Tryko and First Property, through Tryko Holdings, LLC, submitted a claim to Defendant on June 28, 2018. (*Id.* ¶ 5.) Defendant is an insurance company[2] conducting business that issued a Management and Professional Liability Policy on May 20, 2017, with policy number USF1946249.17 (the "Policy"). (Pl. SUMF ¶ 3; Def. Counter SUMF ¶ 3.) Tryko Holdings, LLC was named as an insured and listed as an Insured Organization under the Policy. (Pl. SUMF ¶¶ 5–6; Def. Counter SUMF ¶¶ 5–6.) When the other named Plaintiffs were ultimately added to the Policy as "insureds" the premium for the Policy did not increase. (Pl. SUMF ¶ 8; Def. Counter SUMF ¶ 8.) At the time the Policy was issued there was an exclusion included at Endorsement #18 which read as follows:

> This policy does not apply to, and we will have no obligation to pay any loss, including any defense costs, based upon or arising out of the following claims(s)/ litigation(s)/ matter(s), or the same wrongful act(s), related wrongful act(s), or facts contained in such claims(s)/ litigation(s)/ matter(s): … First National Assets Management LLC v. Tryko.

---

[1] Docket No. OCN-L-1558-18
[2] Defendants failed to make clear any dispute with respect to this material fact set forth in Plaintiffs' SUMF. Accordingly, the Court will deem this fact undisputed for purposes of the pending motion. *See* L. Civ. R. 56.1(a).

(Pl. SUMF ¶ 11; Def. Counter SUMF ¶ 11.)

The first lawsuit that took place—and the suit which the parties dispute has any relation to the subsequent lawsuits venued in New Jersey—is *First National Assets Management LLC v. Tryko*, venued in Cook County, Chicago, Illinois[3] (the "Chicago Lawsuit"). (Pl. SUMF ¶ 12; Def. Counter SUMF ¶ 12.) The Chicago Lawsuit involved multiple allegations that Eliza Garzon, a former employee of a subsidiary of Plaintiffs' prior ownership, First National Asset Management ("FNAM"), had misappropriated trade secrets of FNAM and had breached a confidentiality agreement and a restrictive covenant due to her new employment at, among others, Tryko Holdings, LLC and Tryko Partners, LLC. (Pl. SUMF ¶ 13; Def. Counter SUMF ¶ 13.) The Chicago Lawsuit does not allege incidents or occurrences of billing, billing practices, or invoicing. (Pl. SUMF ¶ 14; Def. Counter SUMF ¶ 14.)

After the Policy became effective in 2018, the same party who was the plaintiff (First National Holdings) in the Chicago Lawsuit, filed two suits in New Jersey against the parties who are the named Plaintiffs here. (Pl. SUMF ¶ 15; Def. Counter SUMF ¶ 15.)

The first New Jersey action was filed in May 2018 in Rabbinical Court by First National Holdings against RKK Holdings, LLC; FNA Jersey BOI, LLC; FNA Jersey Lien Services, LLC; and Public Tax Investments, LLC (the "Rabbinical Lawsuit"). (Pl. SUMF ¶ 16; Def. Counter SUMF ¶ 16.) The Rabbinical Lawsuit alleged breach of fiduciary duties and overbilling, along with aiding and abetting over-inflation of service bills. (*Id.*; *Id.*)

The second New Jersey litigation was filed on June 22, 2018 in the New Jersey Superior Court, by First National Holdings against Tryko Management Services, LLC and First Property Accounting Services, LLC. (Pl. SUMF ¶ 17; Def. Counter SUMF ¶ 17.) It alleged the same claims

---

[3] Docket 2016 CH 06597.

as the Rabbinical Lawsuit—breach of fiduciary duties and over-billing—along with aiding and abetting over-inflation of service bills. (*Id.*; *Id.*) When Plaintiffs submitted claims to Defendant seeking coverage for these suits, Defendant denied the claims because the Rabbinical and NJ lawsuits constituted Related Claims with the previously noticed Chicago Lawsuit (filed May 12, 2016), such that they are treated as a single Claim first made prior to the inception of the 2017-2018 Policy, and not all of the Plaintiffs were insureds under the Policies at the time the claims at issue were made against them. (Pl. SUMF ¶¶ 20–22; Def. Counter SUMF ¶¶ 20–22.) Tryko therefore had to cover the claim, its defense, and ultimate settlement.[4] (Pl. SUMF ¶ 34; Def. Counter SUMF ¶ 34.)

### D. Jurisdiction

Given the diversity of the parties and the amount in controversy, the Court exercises diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## II. LEGAL STANDARD

1. Summary Judgment Standard

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

---

[4] Tryko paid $750,000 to settle the NJ Lawsuit, $750,000 to settle the Rabbinical Lawsuit, and incurred approximately $66,054.96 in litigation costs and fees for the two cases. (Pl. SUMF ¶¶ 35–36; Def. Counter SUMF ¶¶ 35–36.)

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id*. (quoting *Anderson*, 477 U.S. at 250).

"Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue of material fact.'" *Id*. (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

### III.   DISCUSSION

In their Motion for Summary Judgment, Plaintiffs argue that Defendant should have accepted its claim for the NJ and Rabbinical lawsuits because they were in no way related to the Chicago Lawsuit. Specifically, Plaintiffs argue that the exclusion clause is not triggered; the Chicago Lawsuit involved only Chicago tax lien companies and Chicago employees, and it was limited to the allegations of trade secret violations for those Illinois companies, along with allegations of the breach of a restrictive covenant and misappropriation of Illinois tax sale data. (Pl. Moving Br. at 5.)  By contrast, the NJ Court and Rabbinical cases involved billing and invoicing irregularities (allegations of overbilling) for the NJ tax lien entities, claims of fraud in

wrongful billing, claims of fiduciary duty breaches in wrongful billing, and claims of aiding/abetting wrongful billing. (*Id.* at 6.) Second, the Plaintiffs argue that they either were all "insureds", or if they were not, then it was Defendant's responsibility to add them as insureds and failed to do so. (*Id.*) Meanwhile, Defendant argues that five[5] of the six named Plaintiffs were neither insureds nor "Insured Organizations" when the claims were first made against them. (Def. Moving Br. at 14.)

### A. BREACH OF CONTRACT: COVERAGE FOR THE NJ AND RABBINICAL LAWSUITS

Under New Jersey law, "an insurance policy should generally be interpreted according to its plain and ordinary meaning." *American Motorists Ins. Co. v. L-C-A Sales Co.*, 155 N.J. 29, 41 (N.J. 1998) (citing *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175 (1992)). "In attempting to discern the meaning of a provision in an insurance contract, the plain language is ordinarily the most direct route." *Templo Fuente de Vida v. National Union*, 224 N.J. 189, 200 (2014) (quoting *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008)). Where the express language of the policy is clear and unambiguous, "the court is bound to enforce the policy as it is written." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 271 N.J. Super. 409, 416 (N.J. Super. Ct. App. Div. 1994) (quoting *Flynn v. Hartford Fire Ins. Co.*, 146 N.J. Super. 484, 488 (N.J. Super. Ct. App. Div. 1977)). In the absence of any ambiguity, courts should not write for the insured a better policy of insurance than the one purchased. *Vassiliu v. Daimler Chrysler Corp.*, 178 N.J. 286, 293 (2004). In other words, "a court should not engage in a strained construction to support the imposition of liability." *Longobardi v. Chubb Ins. Co. of New Jersey*, 121 N.J. 530, 537 (1990). However, where the terms of the policy are ambiguous and there is doubt regarding the existence

---

[5] First Property, RKK, FNA BOI, FNA Lien, and Public Tax (the "five Plaintiffs").

of coverage, the ambiguity is ordinarily resolved in favor of the insured. *Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 179 N.J. 87, 102 (2004).

In insurance coverage cases, the proponent of coverage bears the burden of establishing coverage under a policy. *Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*, 406 N.J. Super. 524, 538 (App. Div. 2009); *Rosario v. Haywood*, 351 N.J.Super. 521, 529 (App. Div. 2002). This includes establishing if and when each entity became an insured under the Policies, as this is an element of establishing the right to coverage under the policy. Because an insured "bears the burden of bringing its claim within the basic terms of the insurance policy," the plaintiffs must establish that their claim for coverage unambiguously falls under the Policy. *Arthur Andersen LLP v. Fed. Ins. Co.*, 416 N.J. Super. 334, 3 A.3d 1279, 1287 (N.J. Sup. Ct. App. Div. 2010); *Wurst v. State Farm Fire & Case. Co.*, 431 F. Supp. 2d 501, 504 (D.N.J. 2006). On the other hand, it is the insurer's burden to prove that an incident falls within an exclusionary provision of a policy. *Hartford Accident & Indem. Co.*, 98 N.J. at 26.

With respect to Plaintiffs' breach of contract claim, the parties have two principal disputes: whether Defendant can avoid coverage based on the Policy's exclusion for Related Claims/Wrongful Acts and whether, and which of the Plaintiffs qualify as covered entities under the Policy and at what time. Given that the two issues are interrelated, the Court considers them together.

In its motion, Defendant argues that five of the six Plaintiffs were not added to the Policy at the time the claims were made against them. (Def. Moving Br. at 16.)   Plaintiffs FNA BOI, FNA Lien, Public Tax, and RKK were only named in the Rabbinical Action, which was filed April 15, 2018, during the 2017-2018 Policy period. (Rokowsky Cert., Ex. K, at 1.)   FNA BOI, FNA Lien and Public Tax were not added to the 2017-2018 Policy and were not added to the 2018-2019

Policy as insureds until Endorsement 25, effective September 1, 2018, well after the claim was made against these three entities. (Bergstrom Dec., ¶ 84, Ex. B, at 62–64.) Therefore, according to Defendants, these three entities were not insureds under the Policy at the time the claim was first made against them, as required by the Policy. Moreover, RKK was never added to the Policy as an insured, and therefore was never an insured, and certainly was not an insured at the time the claim was made against it. (*Id.*) In sum, Defendant asserts that there can be no coverage for the Rabbinical Action, as none of the entities named therein were insureds under the Policy at the time that claim was made.

In their opposition to Defendant's motion and in their cross-motion, Plaintiffs insist that all six Plaintiffs should be considered insureds because that was the intent of the parties, as evidenced by: (1) Plaintiffs' application for coverage that included them, (2) Defendant's quotations that identified the insureds as "TBD," and (3) the premium charged by Defendant did not change when four of the six Plaintiffs were later added as insureds. (Pl. Opp'n Br. at 15–18; Pl. Moving Br. at 8–9; Rokowsky Certification ¶¶ 30–43; Pls.' Exhibits C–J attached to Moving Brief.)

Upon closer review of the documents exchanged by the parties, however, the Court finds that Plaintiffs' applications and Defendant's quotations do not support Plaintiffs' position. The documents demonstrate that at least as early as May 2017, Plaintiffs indicated their wish to procure broad coverage for a long list of Tryko's subsidiaries. (Pl's Exh. E. at 17–20.) Defendant's quotations, however, listed only "TBD" until its November 21, 2017 quotation, which listed over forty entities as "insured organizations." (Pl's Exh. H at 6, "Endorsement 17".) Of these insured organizations, Tryko Holdings, LLC was the only Plaintiff identified. (*Id*.) Tryko, apparently aware of the Defendant's omission, again submitted in April 2018 the same long list of subsidiaries it had sent Defendant in May 2017. (Pl.'s Exh. I at 15–17.) Defendant's response was again to

9

supply a quotation that omitted Plaintiffs other than Tryko Holdings. (Pl's Exh. J, Endorsement 17.) In short, the record is unambiguous and does not support Plaintiffs' argument that it was the parties' shared initial intent to insure FNA BOI, FNA Lien and Public Tax prior to September 1, 2018, when they were added via Endorsement 25. The Court therefore finds that Plaintiffs have failed to raise a genuine issue of material as to earlier coverage prior to on this basis.

As a separate matter, First Property was the only party named in the NJ Lawsuit, which was filed against it on June 22, 2018, during the 2018-2019 Policy period. (Rokowsky Cert., Ex. L.) First Property was not added to the Policy as an insured until Endorsement 20, effective July 12, 2018, after the claim was first made against First Property. (Bergstrom Dec., ¶ 80, Ex. B, at 56–57.) Accordingly, First Property was not an insured under the Policy at the time the claim was made against it, as required by the Policy.

Further, none of these five entities qualify as insureds under the definition of "Insured Organization" in the Policy. The Policy provides that an Insured Organization includes: 1) the named ensured; 2) any entities listed as insured organizations by endorsement to this policy; 3) a subsidiary; 4) an acquired entity; 5) a new investment fund; or 6) any debtor-in-possession in the event of a bankruptcy proceeding by or against an insured organization. (Bergstrom Dec., Ex. A, at 7; Ex. B at 7.) As noted above, four of the entities were added as insured organizations by endorsement to the Policy, but not until after the claims at issue were first made against them. Meanwhile RKK was never added as an insured organization by endorsement to the Policy. With respect to subsidiaries, the Policy defines a subsidiary as any entity

> 1. in which the named insured [–Tryko Holdings—] owns, directly or through one or more subsidiaries, more than 50 percent of the voting stock or other equity interest; or
>
> 2. the named insured controls, directly or through one or more subsidiaries, the right to elect or appoint the general partner,

> managing member, or more than 50 percent of the directors, trustees, members, partners, or boards of management.
>
> However, with respect to any entity that becomes owned or controlled as described in 1 and 2 above during the policy period, such entity will be a subsidiary only if its assets do not exceed 35 percent of the consolidated assets of all insured organizations as of the inception date of this policy . . .
>
> Subsidiary also includes a special purpose vehicle, alternative investment vehicle, or any other entity that, on behalf of an insured organization, serves as the legal owner or facilitates the making of any investment, and which does not have any employees or assets of its own.
>
> Subsidiary does not include an outside entity.

(*Id.* at 9; *Id.* at 9.) However, based upon the NJ Lawsuit and all of the corporate documentation provided by Plaintiffs, none of the five entities were proven to be 50% or more owned or managed by the named insured—Tryko Holdings, LLC—as required by the Policy. At most, Plaintiffs assert that "Tryko Holdings and its owners are the full 100% owners of RKK . . . which in turn owns and operates all of [the] tax lien companies including (a) FNA [BOI], (b) FNA [Lien], and Public Tax." (Rokowsky Cert., at 2.) However, the lack of evidence to prove that the subsidiaries were at least 50% owned by the named insured does not negate the possibility that they are in fact 50% owned by Tryko. Thus, due to a lack of information provided by the parties, a factual dispute exists as to whether RKK, FNA BOI, FNA Lien, and Public Tax are subsidiaries per the Policy's definition.

Although Defendant argues that the Related Claims/Wrongful Actions provision of the Policy would nonetheless preclude coverage as it limits the liability of the Policy (*See* ECF No. 40-8, Tammaro Dec., Ex. 3.3, at 3,6), a factual dispute still exists over the nexus of the NJ and Rabbinical Lawsuits. The Policy notes that "All Related Claims shall be deemed a single Claim first made during the policy period in which the earliest of such Related Claims was either first

made or deemed to have been first made." (*Id.* at 3.) The Policy defines Related Claims as "all Claims based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or Wrongful Acts." (*Id.* at 6.)

It is first important to establish that although both parties argue over the nexus of the Rabbinical Lawsuit, neither provides any definitive documentation that speaks to the claims made in the Rabbinical Lawsuit. While Plaintiff submits what appear to be agreements to submit to arbitration for the Rabbinical action, neither of these documents provide enough information for the Court to assess the scope of the Rabbinical action.[6] (Rokowsky Cert., Ex. K (describing the action as "related to disputes concerning said LLC agreements and disbursements of funds concerning said LLC agreements.")) Next, even though Plaintiffs argue that "[n]either the NJ Lawsuit nor the Rabbinical Lawsuit contain[] any allegations of trade secret theft or of any of the same or similar allegations that had been raised, in the Chicago Litigation" a review of the NJ Lawsuit Complaint evinces otherwise. (Rokowsky Cert., Ex. L, ¶¶ 28–35.) Specifically, the Statement of Facts section of the NJ Lawsuit Complaint alleges as follows:

> 28. In or about December 2015, FNH met with RKK to discuss their ongoing relationship concerning the Companies, and agreed that (i) the Companies would no longer purchase delinquent tax liens through the Companies, and (ii) the Companies would go into "run-off" as of December 31, 2015.
>
> 29. Shortly after this meeting, Rokowsky, Yonah Kohn and Tryko increased their fraudulent activities, including by committing and engaging in corporate theft.
>
> 30. Rokowsky, Yonah Kohn and Tryko began soliciting three employees from FNH's subsidiary entity, First National Assets Management, LLC.
>
> 31. One of the solicited employees, Eliza Garzon, conspired with Tryko to steal confidential information and other files from

---

[6] Exhibit K includes two executed documents that are written almost entirely in Hebrew. The Court does not consider them because Plaintiffs do not supply certified translations.

12

First National Assets Management, LLC (a subsidiary of FNH) to bring to Tryko.

32. Using a USB flash drive purchased and provided by Tryko, Ms. Garzon stole over 90,000 electronic files from FNH.

33. The stolen information included a complete download of FNH's proprietary and highly confidential diligence database, "FNH App."

34. Rokowsky, Yonah Kohn, and Tryko Holdings (and its Chicago based subsidiary Real Tax Acquisitions, LLC and later Clark & Randolph, LLC) then used and misappropriated FNH's confidential and trade secrets information to unfairly compete with FNH and its subsidiaries in the 2016 and 2017 tax lien auctions in Cook County, Illinois.

35. Indeed, while RKK and FNH were essentially business partners in the NJ business concerning delinquent NJ tax liens, RKK was using FNH's stolen proprietary and confidential information to compete with FNH in Illinois in the same line of business (just in a different state) – delinquent Illinois tax liens.

36. Once FNH learned of the misappropriation, its subsidiary First National Assets Management, LLC filed a lawsuit for trade secret theft and breach of contract against Garzon, Tryko Holdings and Tryko's Chicago-based subsidiaries for damages, which case is still pending in Cook County, Illinois. (First National Assets Management, LLC v. Tryko Holdings, LLC, et al., Case. No. 2016 CH 06597) (the "Illinois Litigation").

37. In May 2016, temporary restraining orders were entered against Garzon, Tryko and other entities affiliated with Tryko, barring them from using or disclosing the information they stole from FNH.

38. During the summary of 2016, Tryko and its related entities agreed to a Consent Order extending the temporary relief ordered by the Court.

39. Notwithstanding the serious nature of the Illinois Litigation, throughout the entire time the Illinois litigation has been pending, Defendants have continued to aid and abet RKK in RKK's continuing fraud and breach of fiduciary duties by submitted false invoices to RKK for payment, and RKK has continued to funnel fraudulent and improper payments to Defendants, to itself and

>>possibly to other related entities, in further breach of RKK's fiduciary duties to FNH.

(*Id.*)

Upon review of the NJ Lawsuit Complaint, there can be no factual dispute that it references some of the allegations and claims of the Chicago Lawsuit as part of its overall claim. However, providing background context in the "Statement of Facts" section of a complaint does not automatically imply a nexus between a current and previous lawsuit. *Smith v. Datla*, 451 N.J. Super. 82, 95 (App. Div. 2017) (holding that "while plaintiff's [many] causes of action arise out of the same operative facts, those common facts can give rise to different claims."). Accordingly, because a genuine dispute exists as to whether a nexus exists between the Chicago Lawsuit and the NJ and Rabbinical Lawsuits, Plaintiffs' Motion for Summary Judgment will be denied and Defendant's Partial Motion for Summary Judgment with respect to whether it should have provided coverage for the NJ and Rabbinical Lawsuits will also be denied.

### B. BAD FAITH

Within its Partial Motion for Summary Judgment, Defendant seeks to dismiss Counts Two through Seven of Plaintiffs' Complaint. Plaintiffs' Complaint (Pl. Moving Br. at 8, 12–15; "Compl.", ECF No. 1-1) alleges that Defendant acted in bad faith by refusing to timely issue the Policy that included all the named Plaintiffs (*id.* ¶ 75), contained undefined terms in the Policy (*id.* ¶ 95), and purposely excluded the Plaintiffs that were involved in lawsuits (*id.* ¶ 105). Plaintiffs therefore allege breach of covenant of good faith and fair dealing (Count Four), bad faith in interpretation of Policy language (Count Six), and bad faith in refusal to issue the endorsement (Count Seven). Defendant on the other hand argues that Plaintiffs' bad faith claims should be dismissed because Plaintiffs have not provided any evidence of such bad faith. (Def. Moving Br. at 19.)

Good faith is generally defined as "honesty in fact in the conduct or transaction concerned." N.J.S.A. 12A:1-201(19). The good faith obligations of an insurer to its insured run deeper than those in a typical commercial contract. Unlike with a typical commercial contract, in which "[p]roof of bad motive or intention" is vital to an action for breach of good faith, *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Assocs.*, 182 N.J. 210, 225 (2005) (internal quotations omitted), an insurer's breach of good faith may be found upon a showing that it has breached its fiduciary obligations, regardless of any malice or ill will. *See Bowers v. Camden Fire Ins. Ass'n*, 51 N.J. 62, 79 (1968).

One inherent fiduciary obligation of every insurer is the duty to settle claims. *See Lieberman v. Empl'rs Ins. of Wausau*, 84 N.J. 325, 336 (1980). Whether an insurer has acted in bad faith and thereby breached its fiduciary obligation in connection with the settlement of claims "must depend upon the circumstances of the particular case." *Am. Home Assurance Co. v. Hermann's Warehouse Corp.*, 117 N.J. 1, 7 (1989) (internal quotations omitted).

A finding of bad faith against an insurer in denying an insurance claim cannot be established through simple negligence. *Pickett v. Lloyd's*, 131 N.J. 457, 481 (1993). Moreover, mere failure to settle a debatable claim does not constitute bad faith. *Id*. at 473 (citing *Chester v. State Farm Ins. Co.*, 789 P.2d 534, 537 (Ct. App. 1990)). Rather, to establish a first-party bad faith claim for denial of benefits in New Jersey, a plaintiff must show "that no debatable reasons existed for denial of the benefits." *Id*. at 481.

Under the salutary "fairly debatable" standard enunciated in *Pickett*, "a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay the claim." *Id*. at 473 (citing *Chester*, 789 P.2d at 537).

15

Here, Plaintiffs were unable to establish as a matter of law a right to summary judgment on their substantive claim, namely, that they deserved coverage for the NJ and Rabbinical Lawsuits. On these grounds alone, Plaintiffs will not be entitled to assert a claim for Defendant's bad faith refusal to pay the claim. *Id.* Moreover, Plaintiffs failed to show "that no debatable reasons existed for denial of the benefits." *Id.* at 481. As noted above, Plaintiffs' absence as named insureds in the Policy is a fairly debatable reason for Defendant to deny Plaintiffs coverage. *See Pickett* 131 N.J. at 473 (citing *Chester*, 789 P.2d at 537 (finding that because dispute over replacement cost versus actual cash value was "fairly debatable," insurer could not be deemed in bad faith for refusing to pay until issue was adjudicated); *Aetna Casualty & Sur. Co. v. Superior Court*, 778 P.2d 1333, 1336 (1989) (finding that two courts' agreement that plaintiff was not covered by policy demonstrated that insurance company had reasonable basis for denying claim)). Moreover, aside for their allegations made in the Complaint and Motion for Summary Judgment, Plaintiffs provided no evidence of any bad faith on the part of Defendant. Accordingly, Defendant's Motion for Summary Judgment with respect to Counts Four, Six, and Seven of the Complaint will be granted.

### C. FRAUD CLAIMS

Plaintiffs also allege that Defendant violated the Consumer Fraud Act ("CFA) (Count Five) (Compl. ¶¶ 78–93), committed fraud by denying coverage (Count Two) (*id.* ¶¶ 48–56), and committed fraud by failing to issue an Endorsement that would add the five named Plaintiffs at issue as insureds to the Policy prior to the time the claims were made against them (Count Three) (*id.* ¶¶ 57–69). Specifically, Plaintiffs allege that Defendant's actions of "marketing and selling insurance policies . . . while not intending to honor such policies . . . is a violation of the [CFA]." (*Id.* ¶ 86.) Defendant argues that these claims should be dismissed as the CFA does not apply to

this matter because there is no private right of action against an insurance company for "fraudulent, deceptive or other similar kind of selling or advertising practices." (Def. Moving Br. at 21.) Defendant also argues that Plaintiffs have not properly pled a fraud claim and that these claims are barred by the economic loss doctrine. (*Id.* at 26.)

The "CFA does apply to the sale and marketing of insurance policies." *Yourman by & Through Yourman v. People's Sec. Life Ins. Co.*, 992 F. Supp. 696, 700 (D.N.J. 1998). The CFA is a broad consumer protection measure enacted to "eliminate sharp practices and dealings in the marketing of merchandise and real estate." *Channel Cos. v. Britton*, 167 N.J. Super. 417, 418 (App. Div. 1979). While the CFA "encompass[es] the sale of insurance policies as goods and services that are marketed to consumers," it was not intended as a vehicle to recover damages for an insurance company's refusal to pay benefits. *Lemelledo v. Beneficial Mgmt. Corp.*, 150 N.J. 255, 265 (1997); *see also In re Van Holt*, 163 F.3d 161, 168 (3d Cir. 1998) (holding that "[t]he mere denial of insurance benefits to which . . . plaintiffs believe[ ] they [are] entitled does not comprise an unconscionable commercial practice"). The claim asserted against Defendant clearly involves a coverage dispute and Plaintiffs have neither argued facts nor provided any evidence that would indicate otherwise. For that reason, Defendant's Motion for Summary Judgment with respect to Count Five of the Complaint will be granted. *See Baskay v. Franklin Mut. Ins. Co.*, Civ. No. 441-11T2, 2014 WL 1613415, at *5 (N.J. App. Div. Apr. 23, 2014) (upholding dismissal of CFA claim because it "involved a coverage dispute.").

Defendant's Motion for Summary Judgment with respect to Counts Two and Three of the Complaint is unopposed. To the extent that Counts Two and Three are independent from Plaintiff's CFA claim, Plaintiffs do not indicate their fraud theory in the Complaint or Motion for Summary Judgment. Other than the CFA claim, there are two kinds of fraud under New Jersey

17

law – legal fraud and equitable fraud.  Common law legal fraud has five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)).  Whereas equitable fraud requires proof of (1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party." *Toll Brothers, Inc. v. Board of Chosen Freeholders of Burlington*, 194 N.J. 223, 254 (2008) (quoting *First Am. Title Ins. Co. v. Lawson*, 177 N.J. 125, 136-37 (2003)).

      To survive this motion for summary judgment, [Plaintiffs] must present evidence that could lead a jury to find clear and convincing proof of fraud. *See Fisher v. Aetna Life Ins. & Annuity Co.*, 39 F. Supp. 2d 508, 511–12 (M.D. Pa. 1998), *aff'd*, 176 F.3d 472 (3d Cir.).  Here, aside from vaguely arguing fraud in their Complaint, and not touching upon it at all in their Motion for Summary Judgment, Plaintiffs failed to provide any evidence of any fraud by the Defendant. Accordingly, Defendant's Motion for Summary Judgment with respect to Counts Two and Three will be granted.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the Court will DENY Plaintiffs' Motion for Summary Judgment, GRANT IN PART and DENY IN PART Defendant's Partial Motion for Summary Judgment. An appropriate Order will follow.


Date: **March 30, 2023**

                                                 s/ Zahid N. Quraishi  
                                                 **ZAHID N. QURAISHI**  
                                                 **UNITED STATES DISTRICT JUDGE**